Andrew J. Easter and Mildred P. Easter v. Commissioner.
Easter v. Commissioner
Docket No. 92255.
United States Tax Court
T.C. Memo 1964-58; 1964 Tax Ct. Memo LEXIS 282; 23 T.C.M. (CCH) 413; T.C.M. (RIA) 64058; March 6, 1964
*282 Held, that the cost basis of certain depreciable property did not exceed $28,000 and that since, prior to the taxable year 1958, the petitioners had already been allowed depreciation deductions with respect to such property in excess thereof, they are not entitled to any depreciation deduction with respect thereto for the taxable year 1958. The remaining useful lives of certain other properties are determined for depreciation purposes. Andrew J. Easter, pro se, 6420 Belair Rd., Baltimore, Md. Arnold E. Kaufman, for the respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: The respondent determined a deficiency in income tax for the taxable year 1958 in the amount of $935.20. By amended answer he made claim for an increase of $94.49 in the deficiency. The parties having reached agreement as to some of the issues, the remaining issues relate to the amount of depreciation to which the petitioners are entitled with respect to four pieces of property described hereinafter. Findings of Fact The petitioners are husband and wife. They filed a joint Federal income tax return for the taxable year 1958 with the district director of internal revenue at Baltimore, Maryland, on April 15, 1959. Hereinafter Andrew J. Easter will be referred to as the petitioner. Property at 6608 Belair Road In 1940 the petitioner acquired by purchase from his mother's estate property located at 6608 Belair Road, Baltimore, Maryland, which then consisted of 7 2/5 acres of land and certain improvements. On November 19, 1948, the petitioner entered into *285 a lease agreement with Honey Lane, Inc., a Maryland corporation, covering a portion of such land and certain improvements to be erected thereon. The lease agreement provided in part as follows: WHEREAS it is agreed by and between the parties hereto that the said Tenant [Honey Lane, Inc.] agree to construct improvements upon the lot of ground hereinafter described consisting of a drive-in restaurant with parking area as hereinafter particularly described and specified upon which the said Landlord [the petitioner] is to obtain a loan for that purpose from the Baltimore Federal Savings and Loan Association to the extent of Twenty Thousand ($20,000.00) Dollars, interest at the rate of five per cent for the term of thirteen years and as part of the rental provision of this Lease the said Tenant is to pay the monthly installments of the principal and interest, taxes, water, rent, insurance and all other expenses for the property and in addition thereto said Tenant agrees to pay the sum of one hundred twenty-five ($125.00) Dollars per month as hereinafter set forth as and for the rental of said property. It was recited in the lease that the president and vice president of Honey Lane, *286 Inc. , should join in and be parties to a mortgage covering the premises to secure the loan. The term of the lease was five years beginning on December 1, 1948, and ending on November 30, 1953. Honey Lane, Inc., had the right to renew the lease for 5 additional five-year periods, the rental to be increased to $400 per month (plus all expenses related to the maintenance of the land and improvements thereon) for the last 3 five-year periods. The lease provided, among other things, that if Honey Lane, Inc., should be in default in the payment of any installment of rent, should violate any of the covenants of the lease, or should assign the premises for any purpose other than as set out in the lease (including the appointment of a receiver), the petitioner had the option to declare the lease forfeited. In connection with the lease the petitioner arranged a loan of $20,000 to Honey Lane, Inc., from the Baltimore Federal Savings and Loan Association. On or about the date of the execution of the lease, November 19, 1948, a mortgage was executed on the land (including improvements to be made) which was the subject of the lease, in favor of the lender. The president and secretary of Honey *287 Lane, Inc., were cosigners of the mortgage. The petitioner guaranteed the repayment of the loan. On or before November 30, 1948, Honey Lane, Inc., entered into a contract with a construction company for the construction of a restaurant building at 6608 Belair Road for the sum of $45,600. Construction of the building, a one-story brick and frame building, commenced in 1948 and was completed in late June or early July 1949. Title to the building was placed in the name of the petitioner. In addition to construction the restaurant building for Honey Lane, Inc., the construction company also constructed a barbecue house at 6608 Belair Road. The construction company charged Honey Lane, Inc., a total amount of $52,338.45 for all the construction, including excavating and grading, parking area, plumbing and electrical work, and a sub-basement in the restaurant. Honey Lane, Inc., paid the construction company about $50,000 of this amount, consisting of the $20,000 borrowed from the savings and loan association and about $30,000 of its own funds. The balance was never paid to the construction company, which charged off such amount on its books. Honey Lane, Inc., in addition to the amount paid *288 to the construction company, paid amounts for the purchase and installation of a used air-conditioning unit and for the installation of poles and wires to bring in electrical service. Honey Lane, Inc., operated the premises at 6608 Belair Road as a drive-in restaurant from June or July 1949 until December 25, 1949, when it ceased operations. During this period it had made monthly rental payments to the petitioner, but apparently had made no payments on the mortgage against the property. Sometime after December 25, 1949, Honey Lane, Inc., went into receivership. As a result, and pursuant to the terms of the lease, the petitioner took over the premises sometime in late 1949 or early 1950. Pursuant to his guarantee the petitioner paid the $20,000 principal of the mortgage defaulted by Honey Lane, Inc., plus $8,000 representing interest thereon, or a total of $28,000. The petitioner made no capital or other contributions of any kind to Honey Lane, Inc., and was never a stockholder, officer or employee of that corporation. In his income tax returns for the taxable years 1949 and 1950 the petitioner claimed deductions for depreciation on the improvements at 6608 Belair Road in the respective *289 amounts of $1,875 and $3,750, based upon a cost of $75,000 and an estimated useful life of 20 years. The respondent did not disallow the claimed deductions. The petitioner did not report any amount in his gross income in either of such returns on account of his repossession of the property. In each of his income tax returns for the taxable years 1955, 1956, and 1957 the petitioner also claimed a deduction of $3,750 for depreciation on the improvements at 6608 Belair Road, based on a cost of $75,000 and an estimated useful life of 20 years. The Internal Revenue Service made an audit examination of each of such returns and made no adjustment, to the depreciation deductions claimed for the years 1955 and 1956. However, for the year 1957 the Internal Revenue Service allowed a depreciation deduction of only $1,512 on such improvements, based on a cost of $75,000 and a remaining useful life of 31 years. In his income tax return for the taxable year 1958 the petitioner claimed a deduction for depreciation on the improvements at 6608 Belair Road in the amount of $3,750, showing cost or other basis of $75,000, depreciation previously allowed or allowable of $31,875, estimated useful life *290 of 20 years, and remaining useful life of 10 1/2 years. In the notice of deficiency, which was dated February 10, 1961, the respondent determined that the amount of depreciation allowable with respect to such property for the taxable year 1958 was $423.39, and disallowed the amount claimed by the petitioner in excess thereof. He determined that the cost or other basis of the property was $45,000, that it had an original useful life of 40 years, and that it had a remaining useful life of 31 years. The cost to the petitioner of improvements at 6608 Belair Road did not exceed $28,000. Other Properties 2801 Adams Mill Road in Washington, D.C., is a cooperative apartment building which was constructed in 1926. The petitioner Mildred P. Easter owned apartment number 108 in such building, and at the time of the trial in this case the petitioners resided there. The petitioner owned apartment number 104 in such building, which he acquired in 1946, and which he rented to third parties. The petitioner owned a frame house located at 6502 Belair Road, Baltimore, Maryland, which he purchased from his mother's estate in 1940 and which was used as a two-apartment family house. At the time *291 of the trial in 1963 this building was about 150 years old. The petitioner also owned a brick building located at 6420 Belair Road, Baltimore, Maryland, which he built in 1924. The lower portion of the building was used as a tavern and the upper floors for residential purposes. In each of his returns for the taxable years 1949, 1950, 1955, 1956, and 1957 the petitioner claimed deductions for depreciation, which were not disallowed by the Internal Revenue Service, and showed costs or other bases and estimated useful lives with respect to the above-described three properties as follows: Cost or
Estimated
Depreciation
Property
other basis
useful life
claimed
Apt. 104, 2801 Adams Mill Rd.
$5,000.00
20 years
$250.00
6502 Belair Rd.
4,723.81
20 years
320.73
6420 Belair Rd.
7,900.70
25 years
600.39
In his return for the taxable year 1958 the petitioner claimed deductions for depreciation on apartment number 104 at 2801 Adams Mill Road, the 6502 Belair Road property and the 6420 Belair Road property in the respective amounts of $250, $320.73, and $600.39, based upon costs and useful lives as stated above. Therein he showed the remaining useful *292 lives of such properties as 8 years, 2 years, and 2 years, respectively. In the notice of deficiency the respondent accepted the costs claimed by the petitioner and determined the remaining undepreciated costs of such properties, their useful lives, their remaining useful lives at January 1, 1958, and the amount of depreciation allowable in 1958 with respect thereto as follows: Remaining
Undepreciated
useful life
Depreciation
Property
cost
Useful life
at 1/1/58
allowable
Apt. 104, 2801 Adams Mill
$2,000.00
50 years
38 years
$52.63
Rd.
6502 Belair Rd.
641.51
40 years
22 years
29.16
6420 Belair Rd.
1,200.80
50 years
35 years
34.31
The respondent in determining the deficiency for the year 1958 disallowed the depreciation claimed by the petitioner in excess of these amounts. At January 1, 1958, apartment number 104 at 2801 Adams Mill Road, Washington, D.C., had a remaining useful life of 25 years. At such date the building located at 6420 Belair Road, Baltimore, Maryland, had a remaining useful life of 16 years. Opinion Section 167(a) of the Internal Revenue Code of 1954 provides that there shall *293 be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear of property used in the trade or business or of property held for the production of income. Section 167(g) of the Code provides that the basis for depreciation shall be the adjusted basis provided in section 1011 of the Code. Sections 1011 and 1012 provide that the adjusted basis shall be the cost of property (with certain exceptions not material here) adjusted as provided in section 1016 of the Code. Section 1016 of the Code provides, in effect, that the basis of the property shall be adjusted by the amount of any depreciation previously allowed, but not less than the amount allowable, with respect to such property. With respect to the depreciable property located at 6608 Belair Road, Baltimore, Maryland, the petitioner claimed a depreciation deduction for the taxable year 1958, showing in his return a basis of $75,000 and depreciation previously allowed or allowable in the amount of $31,875. The respondent in the notice of deficiency determined that the property had a cost basis of $45,000, and that as of the beginning of the taxable year there was a remaining undepreciated basis of *294 $13,125. By an amended answer the respondent affirmatively alleged that the cost of the property to the petitioner was not in excess of $20,000, and that since the petitioner had in prior years taken depreciation deductions in excess of that amount, namely, in the amount of $31,875, there remained no basis upon which depreciation was allowable in the year in question. On brief the respondent takes the position that the cost of the property to the petitioner was not in excess of $28,000, and that for the same reason there is no basis for the allowance of a depreciation allowance. In view of the respondent's affirmative allegation, the burden of proof was upon him to show that the cost of the property to the petitioner was less than the $45,000 which had been determined in the notice of deficiency. Rule 32 of the Rules of Practice of this Court. The evidence here adduced establishes that the cost of the depreciable property to the petitioner was not in excess of $28,000, and we have so found as a fact. The petitioner at the hearing and on brief maintained that the property had a cost of $75,000. It is well established that in determining basis for purposes of depreciation, "the cost" *295 of the property, as used in the statute, means the cost of the property to the taxpayer. Detroit Edison Co. v. Commissioner, 319 U.S. 98; Reisinger v. Commissioner, (C.A. 2) 144 F. 2d 475, affirming a Memorandum Opinion of this Court; and Commissioner v. Revere Land Co., (C.A. 3) 169 F. 2d 469, certiorari denied 335 U.S. 853. At the trial the petitioner testified that to the best of his knowledge the cost of the construction of the restaurant building and the barbecue house was in excess of $75,000. Officers of the lessee and of the construction company testified that the amount paid by the lessee to the construction company for the buildings and related improvements was approximately $50,000. Other costs, not precisely fixed, were paid by the lessee for air conditioning and installation of electric service. However, the petitioner paid no part of any of the costs, and he does not contend that he did. The only investment made by the petitioner consisted of $20,000 paid by him on the principal of the mortgage defaulted by the lessee and $8,000 representing interest on such mortgage. The mortgage covered both the land and the improvements *296 erected thereon. Whether the full amount of $28,000 should be considered as an investment in the improvements (or in both the land and improvements), it is unnecessary to decide. In any event, the petitioner did not have an investment in the improvements in excess of $28,000. [1]
*297 Since the petitioner in years prior to the taxable year 1958 had been allowed depreciation deductions in the amount of $31,875, it follows that when his cost basis, which was not in excess of $28,000, is adjusted by the amount of $31,875, as required by section 1016 of the Code, there remains no basis for the allowance of any depreciation deduction with respect to this property for the taxable year 1958. The parties are in disagreement as to the remaining useful life of this property, but in the view we have taken it is unnecessary for us to give further consideration to that matter. There is no dispute between the parties as to the cost of the other three properties here involved. Both the petitioner in his return and the respondent in the notice of deficiency showed that the cost of apartment number 104 at 2801 Adams Mill Road, Washington, D.C., was $5,000, that the cost of the property at 6420 Belair Road, Baltimore, Maryland, was $7,900.70, and that the cost of the property at 6502 Belair Road, Baltimore, Maryland, was $4,723.84. Nor is there any dispute as to the remaining undepreciated bases of the properties as of the beginning of the taxable year 1958. The only controversy *298 relates to the estimated useful lives of the properties at the time acquired by the petitioner or at the time converted to business or income-producing use, and to the remaining useful lives thereof as of the beginning of the taxable year 1958. As agreed by the parties, the useful life of an asset is the period over which it may reasonably be expected to be useful to the taxpayer in his trade or business or in the production of his income. Massey Motors, Inc. v. United States, 364 U.S. 92; Hertz Corporation v. United States, 364 U.S. 122; and section 1.167(a)-1(b) of the Income Tax Regulations.[2]
*299 In the notice of deficiency the respondent determined that the petitioner had been in error in the estimated useful lives, and the remaining useful lives as of the beginning of the taxable year 1958, used by him for these three properties. The determinations of the respondent, including the determinations as to the amounts of depreciation allowable for the taxable year 1958, are presumptively correct and the burden rests upon the petitioners to prove error therein. M. Pauline Casey, 38 T.C. 357, and Rule 32 of the Rules of Practice of this Court. The petitioner presented very little evidence bearing on the useful lives of these properties. He did not in his testimony state his opinion as to their useful lives at the time acquired or converted to business or income-producing use, or as to their remaining useful lives as of the beginning of the taxable year 1958. Nor did he testify as to the physical condition of the properties or as to other factors which would be relevant and helpful in determining the useful lives and remaining useful lives. The respondent presented as a witness a real estate appraiser employed by the Internal Revenue Service, who expressed the *300 opinion that the cooperative apartment building located at 2801 Adams Mill Road in Washington, D.C., as of 1963, the time he examined it, had a remaining useful life of 20 years, and that it would have had a useful life of 37 years as of the time acquired by the petitioner in 1946. In his return the petitioner had reported a useful life of 20 years and a remaining useful life as of the beginning of the taxable year of 8 years. In the notice of deficiency the respondent had determined a useful life of 50 years and a remaining useful life of 38 years. However on brief, apparently based upon the testimony of his expert witness, he appears to concede that the useful life of this property was 37 years and that its remaining useful life as of the beginning of the taxable year was 25 years. The respondent's witness was qualified by education and experience to express an opinion with respect to the remaining useful life of the property as of the time he examined it. His estimate was based in part upon an examination of the building and a comparison with other apartment buildings in the general neighborhood, as to which he testified in some detail. Many of them had been in existence in excess *301 of 50 years and were still economically useful. He further testified that for property tax purposes the District of Columbia records showed that by 1963 the building had depreciated to the extent of 35% in the 37 years since it had been built. Upon the evidence presented we have concluded that the reasonable estimated useful life of apartment number 104 at 2801 Adams Mill Road at the time acquired by the petitioner in 1946 was 37 years and that therefore its remaining useful life at January 1, 1958, was 25 years. In the recomputation under Rule 50 depreciation will be calculated upon the basis of such a remaining useful life. The petitioner in his return had reported, with respect to the brick buildings located at 6420 Belair Road, Baltimore, Maryland, a useful life of 25 years and a remaining useful life, as of the beginning of the taxable year, of 2 years. In the notice of deficiency the respondent determined that this building had a useful life of 50 years (commencing with the year 1943) [3] and a remaining useful life of 35 years as of January 1, 1958. The respondent's appraiser testified that in his opinion this building had, in 1963, a remaining useful life of 15 years, and *302 that it would have had a useful life of 35 years beginning in 1943. On brief the respondent, apparently on the basis of the testimony of his expert witness, appears to concede that the useful life of the building as of 1943 was 35 years and that as of the beginning of the taxable year it had a remaining useful life of 20 years. The respondent's appraiser testified that the building was in a somewhat poor state of maintenance and repair at the time of his examination in October 1963. He also stated that he checked two commercial services in connection with his examination of this building, and that one of them estimated the total useful life of an average fire resistant residence at 50 years, while the other estimated a total useful life of somewhat in excess of 50 years for a building of that type. *303 In this state of the record we have concluded that as of 1943 a reasonable estimate of the useful life of the building would have been 31 years, and that therefore its remaining useful life as of January 1, 1958, was 16 years. In the recomputation under Rule 50 depreciation will be calculated upon the basis of such a remaining useful life. The appraiser testified that in 1963 he also attempted to locate a building at 6502, Belair Road, Baltimore, Maryland, but could not find it, and hence he gave no testimony with respect thereto. The petitioner testified that the building was in existence in 1958, that in 1963 it was 150 years old, that it was a frame house which he had purchased from his mother's estate in 1940 and that it was used as a 2-apartment family house. We have no reason to doubt the petitioner's testimony, nor do we understand that the respondent denies that this building was in existence in 1958. However, the record does not contain any evidence as to the condition of the building or other evidence upon which we can make a conclusion or finding of fact as to its useful life in 1940 or its remaining useful life as of the beginning of the taxable year 1958. [4] Under *304 these circumstances, we have no alternative but to approve the respondent's determination as to the useful life and remaining useful life of this building and his determination of the amount of depreciation allowable with respect thereto for the taxable year 1958. The petitioner relies upon statements contained in Bulletin "F", an Internal Revenue Service publication setting forth tables of useful lives of depreciable property for the guidance of taxpayers, to the effect that taxpayers may determine reasonable periods of useful life for their depreciable property on the basis of their particular operating conditions, *305 experience, and informed judgment as to technological improvements and economic changes, and to the effect that it would continue to be the policy of the Internal Revenue Service generally not to disturb depreciation deductions. However, such publication makes it clear that the periods of estimated useful life used by taxpayers are subject to review by the Internal Revenue Service and that taxpayers should be prepared to substantiate the periods so used. The petitioner points out that for years prior to 1958 the respondent had accepted the useful lives claimed by him in his returns, and contends that the respondent is, therefore, precluded from changing the rate of depreciation allowable for the taxable year 1958. In this contention the petitioner is in error. It is well established that the acceptance of, or acquiescence in, returns filed by a taxpayer in prior years creates no estoppel against the Commissioner, and does not prevent the correction of any errors which may exist in the taxpayer's return for a particular year. Caldwell v. Commissioner, (C.A. 2) 202 F. 2d 112, and cases cited therein; South Chester Tube Co., 14 T.C. 1229; Wiener Machinery Co., 16 T.C. 48; *306 William R. Collins, 18 T.C. 99, affd. on other issues (C.A. 6) 203 F. 2d 565; Harry Ginsberg, 24 T.C. 273; and Charles D. Mifflin, 24 T.C. 973. In M. Pauline Casey, supra, we specifically stated that "The fact that a revenue agent's report for earlier years accepted the amount of depreciation claimed on the basis of the rates used in the taxable year is not binding on the respondent nor upon us." The petitioner also makes a similar contention with respect to the amount of $75,000 which he claimed for prior years as the cost basis of the improvements made on the property located at 6608 Belair Road, Baltimore, Maryland, and which had not, for such prior years, been questioned by the respondent. The cost of such improvements to the petitioner did not exceed $28,000, and obviously the respondent is not bound to accept the erroneous figure of $75,000 as cost for the purpose of determining whether the petitioner is entitled to a depreciation deduction for the year 1958. At the hearing and on brief the petitioner made some reference to the statute of limitations. No such issue was raised in the petition. However, it may *307 be stated that the record shows that assessment and collection of any deficiency for 1958 is not barred. The petitioners' return for the taxable year 1958 was filed on April 15, 1959, and the notice of deficiency was mailed on February 10, 1961, which was obviously within the 3-year period provided by section 6501(a) of the Code, and under section 6503(a) the mailing of deficiency notice and the filing of the petition with this Court extended the period for assessment and collection. In their petition the petitioners allege that the respondent's adjustments are "illegal, erroneous and unequal, and not in accordance with respondent's practice of relief and or exemptions as to other citizens, etc.," citing article IV, section 2, clause 1, of the Constitution of the United States. On brief they refer to "the continued examination and re-examination of the petitioners' returns." [5]
*308 Article IV, section 2, clause 1, of the Constitution of the United States provides that "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States." However, this clause is directed against discrimination, by a state in favor of its own citizens and against the citizens of other states. Whitfield v. Ohio, 297 U.S. 431. In Slaughter-House Cases, 83 U.S. 36, it was stated with regard to this clause: Its sole purpose was to declare to the several States, that whatever those rights, as you grant or establish them to your own citizens, or as you limit or qualify, or impose restrictions on their exercise, the same, neither more nor less, shall be the measure of the rights of citizens of other States within your jurisdiction. It is thus clear that this clause is a limitation upon the powers of the states and has no application to Federal tax statutes or the administration thereof. There is no merit to this constitutional question raised by the petitioners. Decision will be entered under Rule 50. Footnotes
1. It should be pointed out that section 22(b) (11) of the Internal Revenue Code of 1939, as it existed in the taxable years 1949 and 1950 (when the petitioner regained possession of the property) specifically provided that there should not to be included in gross income any income, derived by a lessor of real property upon termination of a lease, representing the value of such property attributable to buildings erected or other improvements made by the lessee. Nor did the petitioner in either of those years report any income on account of such improvements. Section 113(c) of the 1939 Code, as it then existed, provided that neither the basis nor the adjusted basis of any portion of real property of a lessor should be increased or diminished on account of income thus derived by the lessor in respect of such property and excludable from gross income under section 22(b)(11)↩. Accordingly, the petitioner's basis in these improvements was not increased by reason of his repossession of the property, except to the extent of his payments on the defaulted mortgage.
2. Section 1.167(a)-1 of the Income Tax Regulations provides in part as follows: (a) Reasonable allowance. * * *. The allowance is that amount which should be set aside for the taxable year in accordance with a reasonably consistent plan (not necessarily at a uniform rate), so that the aggregate of the amounts set asid, plus the salvage value, will, at the end of the estimated useful life of the depreciable property, equal the cost or other basis of the property as provided in section 167(f) and § 1.167(f)-1. * * * (b) Useful life. For the purpose of section 167↩ the estimated useful life of an asset is not necessarily the useful life inherent in the asset but is the period over which the asset may reasonably be expected to be useful to the taxpayer in his trade or business or in the production of his income. This period shall be determined by reference to his experience with similar property taking into account present conditions and probable future developments. Some of the factors to be considered in determining this period are (1) wear and tear and decay or decline from natural causes, (2) the normal progress of the art, economic changes, inventions, and current developments within the industry and the taxpayer's trade or business, (3) the climatic and other local conditions peculiar to the taxpayer's trade or business, and (4) the taxpayer's policy as to repairs, renewals, and replacements. Salvage value is not a factor for the purpose of determining useful life. If the taxpayer's experience is inadequate, the general experience in the industry may be used until such time as the taxpayer's own experience forms an adequate basis for making the determination. The estimated remaining useful life may be subject to modification by reason of conditions known to exist at the end of the taxable year and shall be redetermined when necessary regardless of the method of computing depreciation. However, estimated remaining useful life shall be redetermined only when the change in the useful life is significant and there is a clear and convincing basis for the redetermination. * * *
3. It would seem that the petitioner used a beginning date of 1935. The discrepancy in the beginning dates used by the petitioner and the respondent is not explained. The petitioner testified that the building was built by him in 1924 as a sample house. His testimony also indicates that at some time he also used it as a residence. It would seem that at some undisclosed date after 1924 the building was converted to business or income-producing use. Since the evidence does not establish when it was converted to business or income-producing use, we must assume that it was in 1943, the date used by the respondent.↩
4. At the trial the petitioner, while questioning the respondent's real estate appraiser with respect to his statement that he was unable to find the building at 6502 Belair Road, volunteered the statement that Baltimore City authorities had threatened, over his objections, to tear the building down. We think it doubtful whether such a voluntary statement under these circumstances should be considered as evidence. In any event, such statement did not purport to establish that at any time in the year 1958 such authorities were threatening to tear the building down.↩
5. It should be pointed out that the record does not show that the respondent "re-examined" the returns of the petitioners for any particular year, that the examinations that he did make were unauthorized by law, or that his treatment of the petitioners was different from his treatment of taxpayers generally.↩