**REISINGER v. COMMISSIONER OF INTERNAL REVENUE (two cases).**

Nos. 200, 201.

Circuit Court of Appeals, Second Circuit.

Aug. 15, 1944.

476

J. G. L. Molloy, of New York City, and John B. Sullivan, Jr., of Boston, Mass., for petitioners.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, A. F. Prescott, and Muriel Paul, Sp. Assts. to Atty. Gen., for respondent.

Before AUGUSTUS N. HAND, CHASE, and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The petitioners are brothers who filed separate returns of income for the calendar year 1939 and paid their taxes computed in accordance with such returns. The commissioner determined a deficiency in the tax of each, while each claimed refunds. The Tax Court redetermined the deficiencies as they had been determined by the commissioner and the taxpayers filed separate petitions for review which have been heard together.

The deficiencies are the result of the inclusion in the gross income of each petitioner as dividends amounts distributed to them in 1939 in cash and property by C. & W. Realty Corporation, a New York corporation, of which they were the sole stock-holders, each owning one half of the capital stock. They failed to include such distributions in their gross income for the taxable period on the ground that C. & W. Realty Corporation had no earnings and profits accumulated after March 1, 1913, and no earnings and profits for the taxable year out of which the distributions could have been made. They took the position that accordingly such distributions were not to be treated as dividends. Sec. 115(a) of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Code, § 115(a).

It is agreed that C. & W. Realty Corporation had no previously accumulated earnings and profits and that whether it had current earnings and profits in 1939 out of which the distributions were made depends upon whether in the computation to determine that for tax purposes it is entitled to a deduction for depreciation on a building in the City of New York, its relationship to which will later be stated. If no such depreciation deduction is allowable it is agreed that the corporation had earnings and profits out of which the distributions must be taken to have been made. But if an allowance for depreciation may be taken by the corporation it would be so large that it is undisputed that it made no distribution from earnings and profits and paid no dividends to the petitioners which are taxable to them.

■ Whether C. & W. Realty Corporation could wipe out its earnings and profits for tax purposes for 1939 depends upon a correct application of the depreciation provisions of the applicable statute to the following undisputed facts.

It was organized in 1920 to hold, rent, manage and improve real estate. All of its capital stock was issued in equal amounts to the two petitioners for cash and real estate consisting of a residence at No. 993 Fifth Avenue in the City of New York and a nearby garage. On March 14, 1929, it leased the house and land to a New York corporation organized in that year, and called 993 Fifth Avenue Corporation, Inc. The lease was for the term of twenty-one and one quarter years beginning on July 1, 1929, and contained a provision that if it was in full force and effect upon its expiration date the lessee might renew it for three additional terms of twenty-one years each at a rental to be computed as stated but with a fixed minimum. It provided that at the end of the lease the lessee should surrender the property with buildings and fixtures in good order and condition.

The lease also provided that C. & W. Realty Corporation should acquire adjoining real estate at No. 992 Fifth Avenue and lease that to 993 Fifth Avenue Corporation, Inc., which would at its own expense tear down the buildings on the leased land and build an apartment house at an estimated cost in excess of $800,000. This new building was to become the property of the lessor but there was to be no demolition of old buildings until the lessee had paid off existing mortgages on the leased property.

To secure the funds for that purpose and to pay for the erection of the new building, it was agreed that the lessee should obtain a loan secured by a first mortgage on the leased premises which should be applied first to liquidate the existing mortgages, then to defray the cost of the new building, and then any surplus might be retained by the lessee. If the building cost more than the remainder available from the proceeds of the mortgage the lessee agreed to pay such excess.

Pursuant to such agreement, a loan of $1,000,000 was obtained from the Metropolitan Life Insurance Co., secured by a first mortgage on the leased property, executed both by the lessor and by the lessee. The latter agreed to pay the interest and principal on the loan as it became due and the lessor was given the option, upon the lessee's default, to make such payments and treat them as additional rental payable by the lessee. The lessee agreed to pay all taxes assessed on the property; to keep it in repair at its own expense; to keep it insured; and, if any building thereon should be destroyed or damaged, to rebuild or restore it at its own expense to the extent that the insurance should prove insufficient for that.

The lessee had the right to assign the lease provided the assignee assumed all the lessee's obligations thereunder but no assignment was to relieve the lessee from any obligation under the lease.

The new building was completed at a cost of $873,000 and was ready for occupancy July 1, 1930. There was a balance of $695,000 of the mortgage loan after the original mortgages had been paid and this was used in partial payment of the cost of the new building. The remainder was paid in part by the lessee and in part by the surety company which had given the lessor a completion bond as provided in the lease.

On April 2, 1931, the lessee assigned the lease to Metropolitan Apartments, Inc., a subsidiary of the surety company, which did not assume the lessee's obligations. On August 17, 1932, the latter assigned the lease to Reisinger Realty Corporation, which was a New York corporation organized by the petitioners to obtain the leasehold and operate the apartment house. This assignee did assume the obligations of the original lessee and it partially performed them at least up to December 31, 1939. The 993 Fifth Avenue Corporation was dissolved in 1937. So far as appears the C. & W. Realty Corporation had, up to and including the taxable year, paid nothing on account of the construction and maintenance of the apartment house.

We think the decision of the Tax Court was right for the reason that C. & W. Realty Corporation had as yet made no investment in the apartment building. That such a building does depreciate in value is not to be questioned. But that is only one of the factors which enter into the allowance of depreciation for tax purposes. Section 23(l) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code § 23(l), is applicable and provides for a reasonable allowance for the exhaustion, wear and tear, including a reasonable allowance for obsolescence, (1) of property used in trade or business or (2) of property held for the production of income. Subsection (n) of the above statute, however, provides that the basis for the allowance "in respect of any property shall be as provided in section 114." This last mentioned section makes the basis for an allowance for depreciation the same as "the adjusted basis provided in section 113(b) for the purpose of determining the gain upon the sale or other disposition of such property." Section 113(b) shows that the basis to be used here is the cost of the property adjusted as provided in its subsection (1) (B). We need not be concerned with any adjustment of the basis because C. & W. Realty Corporation, which is to be considered a taxpayer for this purpose, has not shown that the property has cost it anything and consequently it has no basis, adjusted or otherwise, for the allowance of a deduction for depreciation upon it.

The purpose of the statute allowing deductions for depreciation is to permit the taxpayer currently to receive income tax-free to the extent that wear and tear and time decrease the value of his invest-

ment, or what is treated as his investment, in the property. Generally his investment is what the property has cost him. We think this is an instance where the cost which is the basis for depreciation is the cost to the taxpayer. See Detroit Edison Co. v. Commissioner, 319 U.S. 98, 63 S.Ct. 902, 87 L.Ed. 1286. Only a taxpayer who has a depreciable interest in property may take the deduction, and that interest must be in existence in the taxable period to enable him to show a then actual diminution in its value. It is not enough that the taxpayer may in the future have to make an investment which will then depreciate in value. Weiss v. Wiener, 279 U.S. 333, 49 S.Ct. 337, 73 L.Ed. 720; New York Cent. R. Co. v. Commissioner, 2 Cir., 79 F.2d 247. Consequently, the fact that C. & W. Realty Corporation permitted its land to be mortgaged to raise funds which were used to pay in part the cost of the building did not give it a depreciable interest in the property. Nor did the possibility that it might in the future have to pay off the mortgage to free its property from that burden give it any interest therein subject to depreciation in 1939.

As we are now concerned only with the lessor's right to a deduction for depreciation in 1939, we do not attempt to decide whether the lessee then had a depreciable interest in the building. Even if it had none, the lessor could not take a deduction for depreciation merely because no one else could. New York Central R. Co. v. Commissioner, supra.

Decision affirmed.