OPINION. Opper, Judge: Respondent makes no effort to meet petitioner’s contention that the doctrine of Reisinger v. Commissioner (C. C. A., 2d Cir.), 144 Fed. (2d) 475, is inapplicable to inherited property. That doctrine deprives a lessor of depreciation deductions if the lessee has furnished the improvements upon which depreciation is claimed. Cf. Therese C. Johnson, 7 T. C. 465. But the function of the owner’s investment, which in such cases is otherwise absent and which the depreciation deductions are hence not required to replace, cf. Detroit Edison Co. v. Commissioner, 319 U. S. 98, is, in the case of inherited property, performed by the intervention of the estate tax upon the improvements transmitted from decedent to devisee. The basis of inherited property is accordingly not cost, as it was in the Detroit Edison and Beisinger cases, and to say that a property cost the taxpayer nothing makes no contribution to the solution of the present question. As opposed to cost, the basis of property acquired by devise is categorically fixed by statute as fair market value on the date of acquisition. Internal Revenue Code, sec. 113 (a) (5). Hence, if we can discover the fair market value of the property in question at the date of decedent’s death, Augustus v. Commissioner (C. C. A., 6th Cir.), 118 Fed. (2d) 88, (or the figure at which it was returned for estate tax purposes, which is recognized as the equivalent, Regulations 103, sec. 19.113 (a) (5)) the upshot would ordinarily be its basis for depreciation in petitioner’s hands, without any reference to its “cost.” Having acquired a basis by the incidence of the estate tax, the gradually disappearing value of a wasting asset can not be replaced except by periodic depreciation adjustments. This must be true notwithstanding that the long term lease, subject to which the property was inherited, appears to extend beyond the building’s anticipated useful life. At least by the end of the lease term the property will be returned with a worthless building, and petitioner’s capital will have been correspondingly reduced, unless the provision in the lease requiring the tenant to return the improvements in first class condition and repair has the effect asserted by respondent, that the building would have to be replaced at that time by the lessee, and hence that no diminution in the lessor’s interest could take place for which depreciation need be allowed. Cf. Mississippi River & Bonne Terre Ry., 39 B. T. A. 995. This raises a narrow question which has been narrowly dealt with by the courts. It reduces to the precise effect of the tenant’s obligation to “keep said buildings, fixtures, and improvements in good and tenantable condition and repair, and upon the expiration or other sooner determination of this lease [to] yield up the demised premises and all buildings and improvements thereon * * * in first class condition and repair * * *.” If this imports an obligation to “return to it [the lessor] replaced buildings equal to the value of the property originally leased,” it eliminates the prospect of loss and with it the depreciation deductions. See Atlantic Coast Line R. Co. v. Commissioner (C. C. A., 4th Cir.), 81 Fed. (2d) 309; certiorari denied, 298 U. S. 656. Otherwise, the deduction is permissible. Alaska Realty Co. v. Commissioner (C. C. A., 6th. Cir.) 141 Fed. (2d) 675. Wlyle the answer here is not without some difficulty, it seems clear at least that the obligation assumed was to return the same building, not a new one. Granted that such a structure had been maintained with scrupulous care, and that its condition would be as good as such care could make it, it does not seem practical to expect that a 50-year old edifice would be as valuable as one half its age. We find no suggestion that the tenant would be required to make good that difference in value. See St. Paul Union Depot Co. v. Commissioner (C. C. A., 8th Cir.), 123 Fed. (2d) 235. The consequence is that petitioner will suffer some loss from depreciation, and hence that some corresponding deduction must be allowed. Terminal Realty Corporation, 32 B. T. A. 623. It accordingly becomes necessary to dispose of the contested question of basis. This, as we have already noted, involves the figure at which the property was returned for estate tax purposes, or its fair market value at the date of death, which are synonymous. The only difficulty here is that the property was included on the estate tax return with one aggregate figure for land and improvements combined. We conceive the sole remaining task as requiring a segregation of the two values. The witnesses, all of whom were produced by petitioner, were not able to shed sufficient light on this aspect of the problem for us to profit greatly by their testimony. Two appraised the building on a replacement basis, with no discount for depreciation or obsolescence. The third valued the land and deducted this from an assumed total value at variance with that used by the executors. By combining the proffered testimony, however, and adding other facts appearing in the record, we have arrived at the valuation of $250,000, as set forth in our findings. The annual depreciation deductions can readily be computed by using that basis, since there is no apparent disagreement between the parties as to the remaining useful life of the building, or as to the share of the total depreciation attributable to petitioner’s interest. Reviewed by the Court. Decision will be entered under Rule 60.