Charles B. BARNES and Philip B. Buzzell, Executors of and Trustees under the Will of William O. Blake

v.

UNITED STATES of America.

Civ. A. No. 56–107.

United States District Court

D. Massachusetts.

May 27, 1963.

Charles M. Ewing and Philip B. Buzzell, Boston, Mass., for plaintiff.

Rufus E. Stetson, Dept. of Justice, Washington, D. C., W. Arthur Garrity, Jr., U. S. Atty., A. David Mazzone, Asst. U. S. Atty., Boston, Mass., for defendant.

WYZANSKI, District Judge.

## I.

This is an action for recovery of a portion of the income taxes paid by plaintiffs for the years 1942, 1943, and 1945 through 1948. With respect to each of the six years there is a question whether plaintiffs were entitled to deduct depreciation on the so-called Blake Building; and with respect to the year 1943 there is an additional question whether the plaintiffs sustained a deductible loss in the sale of property in Hingham.

## II.

Plaintiffs are executors and trustees under the will of William O. Blake who died November 10, 1934. The will established a trust of certain property, including Blake's interest in property on which the Blake Building had been erected at the corner of Washington Street and Temple Place, Boston and Blake's interest in Hingham on which there were a summer residence and related structures. Under the trust, the widow, who died in 1940, had a life estate, and four daughters, who are still alive, had remainder interests.

The history of the interest of Blake in the Boston property is as follows:

November 15, 1904 Blake and his mother, as tenants in common, owned the fee at the corner of Washington Street and Temple Place, on which there was an old building. That day they leased to George A. Carpenter the premises for a period of 75 years beginning August 1, 1908 for an annual rental of $70,000. The lease provided that the lessee, at his own cost, should remove the existing building and erect a building of not less than 5 stories.

May 20, 1908, the City of Boston in the meantime having taken some of the land, the lessors and lessees modified their 1904 lease. Provision was made that the lessee should erect an 11 story building; to that end, the lessors would lend the lessees the compensation paid by the City of Boston and also additional funds; and that the lessee at defined times should pay principal and interest on the loan.

By January 1, 1911 the new Blake Building was completed. At that time its useful life was 50 years.

May 11, 1913 Mrs. Blake died leaving to her son William all her interest in the property.

November 1, 1918 Blake as lessor and Carpenter as lessee entered into an agreement reducing the amount Carpenter should pay on the loan made by Blake pursuant to the 1908 agreement.

As of January 1, 1934 Carpenter, as lessee, owed Blake as lessor $9,427,34 as past due rent, together with three $10,000 installments of principal for the years 1931, 1932, and 1933.

March 19, 1934, without terminating the lease, the lessor agreed with the lessee to reduce the rental payments for the period January 1, 1934 through December 31, 1935.

William O. Blake died November 10, 1934 and George A. Carpenter died November 18, 1934. At the time of Blake's death the useful life of the Blake Building was 50 years.

December 30, 1935 the representatives of the estates of Blake and Carpenter, without terminating the lease, reduced the rental payments for the period January 1, 1936 through December 31, 1937. January 1, 1938 the trustees under the Blake will and the representatives of Carpenter's estate, without terminating the lease, reduced the rental payments for the period January 1, 1938 through February 1, 1959.

For the six tax years 1942, 1943, and 1945 through 1948 the taxpayer, in timely filed fiduciary income tax returns, claimed deductions for depreciation with respect to the trust's alleged interest in the Blake Building. The Commissioner of Internal Revenue disallowed these claimed depreciation deductions, and as-

sessed deficiencies based upon such disallowance. The taxpayer paid the deficiencies and interest, made timely claims for an administrative refund, and, after the Commissioner had rejected these claims, timely sued in this Court.

On this first branch of the case the sole question is whether in 1934 the trustees had in the six taxable years such an interest in the Blake Building as to be entitled to deduct from the trust's gross taxable income amounts on account of the depreciation of that building.

The relevant statute, § 23 of the Internal Revenue Code of 1939, 26 U.S.C. (1952 ed.) § 23, provides that:

"In computing net income there shall be allowed as deductions:

" * * * *  *Depreciation*. A reasonable allowance for the exhaustion, wear and tear * * *

"(1) of property used in the trade or business, or

"(2) of property held for the production of income. * * *"

▇ To have the benefit of this statutory deduction the taxpayer has the burden of proving that in the property as to which he seeks a depreciation allowance he has an interest subject to depreciation. Schubert v. C. I. R., 4th Cir., 286 F.2d 573, 579; Commissioner v. Moore, 9th Cir., 207 F.2d 265, 268; Goelet v. United States, S.D.N.Y., 161 F.Supp. 305, 309, aff'd, 2nd Cir., 266 F. 2d 881. Such a burden plaintiffs have not maintained.

▇▇ In this case the Blakes did not invest their money in the construction of the building and make it their investment. On the contrary, like bankers or other creditors, they lent money to the lessee for him to invest in the building. A mere creditor who transfers money to another for acquisition of property does not have a depreciable interest therein. Commissioner v. Revere Land Co., 3rd Cir., 169 F.2d 469. Hence a lessor who, like the Blakes, on a promise of repayment, contributes to the cost of a building erected by a lessee is not on that account entitled to a depreciable allowance. Ibid.

▇ Nor is a lessor, like the Blakes, entitled to a depreciation allowance merely because his property in the reversion was increased by the value of the building when it was erected, and became less valuable as the building depreciated. Except in extraordinary circumstances, not present here, the general rules, judicially approved, with respect to taxable years before 1942, were first, that a lessor did not realize taxable income from improvements placed upon the leased property by the lessee until the lessor repossessed the property, Helvering v. Bruun, 309 U.S. 461, 60 S.Ct. 631, 84 L.Ed. 864; M. E. Blatt Co. v. United States, 305 U.S. 267, 59 S.Ct. 186, 83 L.Ed. 167; second, that inasmuch as the lessor was regarded as deriving no taxable income before he entered into possession of the building paid for by his tenant, the lessor was not entitled to take depreciation occurring before entry. Commissioner v. Moore, and Commissioner v. Revere, both supra; and third, that if the lessor did enter, then he realized as income the current value of the building, Helvering v. Bruun, and was thereafter from that value entitled to take a depreciation allowance. See Mertens, Law of Federal Income Taxation, § 23.90. For 1942 and subsequent years, Congress provided that even when the lessor re-entered he did not have to include in his gross income the current value of a building erected by his lessee, (see § 115 of the Internal Revenue Act of 1942); and from such exclusion it necessarily follows that the lessor would not be entitled to take depreciation on the building if after January 1, 1942 he took possession thereof.

In short, when William Blake was alive he was not on any theory entitled to take depreciation on the building which his tenant Carpenter had erected with funds lent by Blake, and of which (despite breaches by Carpenter of his covenants as lessee) Blake had never taken possession by terminating the lease and making entry.

Inasmuch as Blake had no property in the Blake Building upon which he could validly claim a depreciation allowance, his devisees, who made no investment of their own, have no right to take a depreciation allowance on that building. Schubert v. C. I. R. and Goelet v. United States, both supra. Rowan v. C. I. R., 22 T.C. 865. It is not relevant that in their estate tax return the executors of Blake included in the estate the value of the building, and paid estate taxes based thereon. A payment of such taxes does not represent the kind of investment in a building upon which a depreciation allowance is calculable. Ibid. Not having any right to take a depreciation allowance on the Blake Building, the devisees are not affected by any estimate made in 1934 as to the then economic life of the building.

Plaintiffs are not entitled to any recovery on the ground that the Commissioner erred in rejecting their claimed depreciation allowances.

### III.

Plaintiffs' second claim relates to a loss allegedly sustained in a transaction entered into for profit with respect to a summer residence in Hingham.

As noted previously, at his death on November 10, 1934, William O. Blake left him surviving a widow and four daughters, one of whom was married to C. B. Currier. Included in his estate and in the trust he created was a 3 acre site at 83 Summer Street, Hingham, on which, among other buildings, stood a large residence, somewhat dilapidated, but suitable for immediate occupancy without marked discomfort.

In their Federal estate tax return the executors of Blake valued the property at $26,175 as of 1934. At all relevant times the Hingham tax authorities valued the property at around $35,000. At all relevant times the buildings on the property were insured for $18,500.

After Mr. Blake's death the trustees to whom the Hingham estate was devised allowed Mrs. Blake, the life tenant, to occupy it rent free; and she took advantage of this opportunity for several weeks each year. After her death in 1940, the trustees allowed Mr. and Mrs. Currier and their four children to occupy the premises, rent free, from September 1942 until at least the middle of January 1943. These occupancies persuade this Court that the residence was even as late as 1943 worth not less than $20,000.

By an agreement dated January 23, 1943, the trustees contracted to sell to C. B. Currier the Hingham property for $4,500, payable at the rate of $50 per month, the buyer agreeing that if he resold the property before February 1, 1958 for more than $4,500, he would pay over to the trustees his profit (after taking improvements into account). C. B. Currier made payments as provided; but, though he and his family continued to occupy the premises, he did not take title until 1946.

After the death of Blake, the trustees were prepared to sell the Hingham property. But they took no steps toward that end beyond notifying two real estate brokers that the property was for sale. It does not appear whether the trustees set a price for the sale, or whether the brokers set such a price. It does not appear that either the trustees or the brokers advertised the property, or took any active means to promote a sale. Except for a neighbor seeking to buy the land in order to protect his own residence, no one seems to have come forward with an offer for the premises.

Plaintiffs contend that they are entitled to deduct the difference between the value of the Hingham premises at Blake's death and the price set in the 1943 agreement as a loss cognizable under § 23(e) of the Internal Revenue Code of 1939, which provides:

"§ 23. Deductions from gross income.

"In computing net income there shall be allowed as deductions:

\* \* \*

"(e) *Losses by individuals.*—In the case of an individual, losses sustained during the taxable year and

not compensated for by insurance or otherwise—

\* \* \*

"(2) if incurred in any transaction entered into for profit, though not connected with the trade or business \* \* \*."

In my opinion the Commissioner rightly rejected that claim for two separate reasons.

First, recognition of the loss was precluded by § 24(b) (1) (F), which provides that:

"(b) *Losses from sales or exchanges of property.*

"(1) *Losses disallowed.*—In computing net income no deduction shall in any case be allowed in respect of losses from sales or exchanges of property, directly or indirectly—

\* \* \*

"(F) Between a fiduciary of a trust and a beneficiary of such trust."

The sale by the trustees to the husband of a beneficiary was a sale "directly or indirectly \* \* \* [b]etween a fiduciary of a trust and a beneficiary of such trust." Cf. Boehm v. Commissioner, 28 T.C. 407, 410. Probably no sale from a trustee to the spouse of a beneficiary can serve as the basis of a recognizable tax loss because of the breadth of the statutory phrase "directly or indirectly", and because of the obvious Congressional policy to require the buyer to be without any interest, legal or economic, in the trust, and because, *prima facie*, a husband has an economic interest in a trust from which his wife derives an income. But even if (which I doubt) some sales by trustees to husbands of beneficiaries could serve as a basis of recognizable tax losses, the sale here involved cannot so serve because the property sold by the trustees was sold to a husband of a beneficiary for occupancy by that beneficiary, and is thus clearly a sale to a third person for the expected use of a beneficiary of the trust.

■ Second, the recognition of this loss is precluded because it was not a "transaction entered into for profit" as required by § 23(b) (2). Whatever may have been their duties under the laws of Massachusetts governing fiduciaries, the trustees never "appropriated to income-producing purposes" the Hingham estate. Thus they failed to establish any foundation for the claim that the property was being used for business purposes when it was sold. Treas.Reg. III, § 29.23 (2) (1). Rumsey v. Commissioner, 2nd Cir., 82 F.2d 158. Equally important, their failure actively to promote the sale of the property, or vigorously to test what would be a fair price for the property, leads this Court to conclude that as a matter of fact as well as of law that what the trustees intended was not a "transaction entered into for profit" but an amicable family settlement until a buyer outside the family could be found.

Judgment for defendant with costs.