Philip B. BUZZELL et al., Trustees,
Plaintiffs, Appellants,

v.

UNITED STATES of America,
Defendant, Appellee.

No. 6174.

United States Court of Appeals
First Circuit.

Jan. 28, 1964.

Charles M. Ewing, Boston, Mass., with whom Hemenway & Barnes, Boston, Mass., was on brief, for appellants.

Crombie J. D. Garrett, Attorney, Department of Justice, with whom Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, and David O. Walter, Attorneys, Department of Justice, and W. Arthur Garrity, Jr., U. S. Atty., were on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

WOODBURY, Chief Judge.

This is an appeal by the executors and trustees under the will of William O. Blake from a judgment dismissing their action to recover alleged overpayments of income taxes for six tax years, 1942, 1943, and 1945 through 1948. The only question presented is whether the trustees of the Blake estate were entitled to take deductions for depreciation on a building for the calendar years in question.

On November 15, 1904, Blake and his mother, as tenants in common, owned the fee of a parcel of land at the corner of Washington Street and Temple Place in downtown Boston on which there was an old building. On that day they leased the premises to one Carpenter for 75 years beginning August 1, 1908, for an annual rental of $70,000. It was provided in the lease that Carpenter, the lessee, at his own cost, should remove the old building and erect a new one of not less than 5 stories in its place.

Before the effective date of the lease the City of Boston took part of the demised land for a public purpose, and in May 1908 the lessors and the lessee modified their 1904 lease by providing that the lessee should erect an 11 story fireproof building and, to that end, that the lessors should lend the lessee the com-

pensation paid by the City, plus additional funds, and that the lessee at defined times should repay principal and interest on the loan. In this modification of the original lease it was also provided:

"The said Lessee or his legal representatives may at anytime after said new building is completed and upon full performance of all his covenants and agreements under said Lease and supplemental agreements down to that time surrender said premises and Lease and shall thereby be absolutely discharged from further liability under or on account of said lease."

The new building was completed by January 1, 1911. William O. Blake succeeded to his mother's interest in the property upon her death in 1913.

Subsequently, but without terminating the lease, Blake as lessor and Carpenter as lessee entered into supplemental agreements, one in 1918 reducing the amount Carpenter should pay on the loan made by the Blakes pursuant to the 1908 agreement and another early in 1934 reducing Carpenter's rental payments from January 1, 1934, to December 31, 1935.

Blake died on November 10, 1934, and Carpenter died on November 18, 1934. In December, 1935, representatives of the estates of Blake and Carpenter without terminating the lease reduced rental payments from January 1, 1936, through December 31, 1937, and later, on January 1, 1938, they again without terminating the lease reduced rental payments from that date through February 1, 1959.

The appellants concede that the initial agreement between Carpenter and the Blakes contemplated the ordinary type of tenant-financed construction which would give Carpenter the clear right to take depreciation on the building. That is to say, they recognize that a tenant who leases vacant land and with his own or borrowed funds, even with funds borrowed from the lessor, erects a building on the land for rental to subtenants is the one who has made the investment in the building and as such is the one entitled to take depreciation. See Commissioner v. Revere Land Co., 169 F.2d 469 (C.A.3), cert. denied, 335 U.S. 853, 69 S.Ct. 82, 93 L.Ed. 401 (1948); Treas. Reg. § 1.167(a)—4 (1960). But they say that the court below was incorrect in its belief that a debtor-creditor relationship subsisted between the Blakes and Carpenter after the 1908 modification of their original agreement under which the Blakes provided the entire cost of the building and Carpenter obtained the right to surrender the premises at any time he was not in default and be absolutely discharged from further liability under the lease. Their argument is that subsequent to the 1908 modification there was no absolute legal obligation on Carpenter's part to pay or legal assurance on Blake's part that he would receive payment. Wherefore they submit that Blake, who had provided the funds for the entire cost of the building, was the "investor" in it and not Carpenter, who had made no "investment" in the building because at any time "he could walk out scott free."

We do not agree. Carpenter was under an absolute obligation to pay Blake the funds the latter advanced for construction of the building unless and until Carpenter, when he was not in default on his obligation to repay, chose to surrender the premises, which he never did. The 1908 modification created a debtor-creditor relationship which the debtor, Carpenter, could terminate in either one of two ways, by payment or by surrender of the premises. Since, at least to the time with which we are concerned, Carpenter did not, perhaps being in default could not, surrender the premises, he remained under obligation to repay the money advanced by Blake for construction of the building.[1] Thus Carpenter was a debtor in the ordinary sense, and as such the "investor" in the building.

1. Indeed, the 1938 agreement recited that the sum owing to the taxpayer by the lessee had been reduced from the $300,- 000 stipulated in the 1918 agreement to $182,500.

Subsequent modifications of the original lease changed the rentals due and the times and amounts of the payments of principal and interest due Blake but did not undo their debtor-creditor relationship. As a creditor Blake and his successors were not the ones entitled to take depreciation.

Judgment will be entered affirming the judgment of the District Court.