*Decision will be entered under Rule 50.*

CATHARINE B. CURRIER AND C. BERTRAM CURRIER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2586–66. Filed December 26, 1968.

C. Bertram Currier, pro se.
*Robert B. Dugan*, for the respondent.

TIETJENS, *Judge:* The Commissioner determined deficiencies in income taxes of petitioners as follows:

| Year | Deficiency |
|------|-----------|
| 1946 | $570.05 |
| 1947 | 687.72 |
| 1948 | 530.02 |

The question in this case is whether Catharine B. Currier had a depreciable interest in a building during the years 1946, 1947, and 1948.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation, including the supplemental stipulation, and the exhibits attached thereto are incorporated herein by this reference.

C. Bertram Currier and Catharine B. Currier, husband and wife, resided in Hanover, Mass., at the time they filed their petition herein. They filed joint Federal income tax returns for the taxable years 1946, 1947, and 1948 with the collector of internal revenue for the district of Massachusetts.

Catharine B. Currier (hereinafter referred to as petitioner) is a beneficiary of a trust under the will of William O. Blake (hereinafter referred to as Blake), her father, who died November 10, 1934. The will established a trust of certain property, including Blake's interest in property in Boston on which the Blake Building had been erected. Under the trust, Blake's widow, who died in 1940, had a life estate,

and Blake's four daughters, including Catharine, had remainder interests.

On November 15, 1904, Blake and his mother, as tenants in common, owned in fee simple a parcel of land located in Boston, on which there was an old building. That day they leased to George A. Carpenter (hereinafter referred to as Carpenter) the premises for a period of 75 years beginning August 1, 1908, for an annual rental of $70,000. The lessee was to remove the existing building and erect in its stead a building of not less than five stories. Upon default of the lessee, including his default in the payment of rent, the lessor had the right to repossess the building without prejudice to any other remedies provided by law.

On March 20, 1908, the City of Boston in the meantime having taken some of the land, the lessors and lessees modified their 1904 lease. Provision was made that the lessee should erect an 11-story building; the lessors would advance to the lessees the compensation paid by the City of Boston and also furnish the additional funds to meet construction costs. Provision was made that the lessee would repay the entire sum furnished by the lessors for construction, together with interest. The lessee's failure to make interest payments was to be considered as a failure to pay the rent and the provisions in the 1904 lease as to the nonpayment of rent were to apply. At any time after completion of the new building, and upon full performance of all his covenants and agreements, the lessee had the right to terminate the lease and be absolutely discharged from further liability under the lease. By January 1911, the new Blake Building was completed. Blake's mother died May 11, 1913, leaving her son all her interest in the property.

On November 1, 1918, Blake and Carpenter entered into an agreement reducing to $300,000 the amount Carpenter should pay on the loan made by Blake pursuant to the 1908 agreement. No repayments of the principal amount of the construction costs had been made between 1908 and November 1, 1918.

On March 19, 1934, Blake and Carpenter entered into a further agreement, which provided for the temporary assignment of leases to Blake and for the application of rents to amounts due from Carpenter under the prior agreements. This agreement was to be effective for the period January 1, 1934, through December 31, 1935. By express provision the agreement stated that after December 31, 1935, it was not to affect the obligations imposed upon Carpenter under the terms of the original lease.

Blake died November 10, 1934. In Blake's Federal estate tax return, Blake's interest in the land and building was valued at $1,147,188.18

less a then-existing mortgage liability of $735,000. No allocation was made in the estate tax return as between the land and the building. For the years 1934 and 1935, the Board of Assessors for the City of Boston assessed the Blake Building and land at a total value of $1,500,000 allocated as follows: Land—$1,365,000, building—$135,000.

Carpenter died November 18, 1934. On December 20, 1935, the representatives of their respective estates agreed to continue the relationship of lessor and lessee with respect to the property here involved. This agreement provided that the provisions of the agreement of March 19, 1934, should be extended for 2 years, but that nothing contained in the 1935 agreement should affect the liability of the lessee in each year after December 31, 1937, to make payments on account of the mortgage principal until the entire amount of the mortgage principal assumed by Carpenter under the 1918 agreement was paid in full.

While the 1918 agreement provided that the lessee agreed to repay $300,000 of the principal amount of the mortgage, it also expressly provided that the 1908 agreement "is to remain unchanged in all other respects than as herein provided." The 1908 agreement provided that, at any time after completion of the new building, and upon full performance of all his covenants and agreements, the lessee had the right to terminate the lease and be absolutely discharged from further liability under the lease.

On January 1, 1938, the trustees under the Blake will and the representatives of Carpenter's estate, without terminating the lease, reduced the rental payments for the period January 1, 1938, through February 1, 1959. This agreement recited that the principal amount of lessee's indebtedness was mutually agreed to be $182,500 as of January 1, 1938. Provision was made that the net proceeds from the building be paid out in a manner to insure the payment of the principal and interest on the mortgage indebtedness.

For the taxable years 1946, 1947, and 1948, the executors and trustees of Blake's estate, in timely filed fiduciary income tax returns, claimed deductions for depreciation with respect to the trust's alleged interest in the Blake Building in the amount of $11,413.38 for each year. For income tax purposes these amounts were allocated under each year's return between the trust entity and the four beneficiaries in the following amounts:

| Year | Trust entity | Each of the four beneficiaries |
|---|---|---|
| 1946 | $2, 718. 33 | $2, 173. 77 |
| 1947 | 1, 415. 16 | 2, 499. 55 |
| 1948 | 2, 298. 66 | 2, 278. 68 |

The Commissioner disallowed the depreciation deductions claimed by the trust. The trustees paid the deficiencies and sued the United States in the Federal District Court for a refund, claiming the Commissioner had erred in disallowing the trust's claimed depreciation deductions with respect to the trust's alleged interest in the Blake Building. The Commissioner's determination was upheld on the basis that the trust did not have a depreciable interest in the Blake Building. *Barnes* v. *United States*, 222 F. Supp. 960 (D. Mass. 1963), affirmed sub nom. *Buzzell* v. *United States*, 326 F. 2d 825 (C.A. 1, 1964).

After the favorable outcome of his suit against the trustees, the Commissioner determined deficiencies in the income taxes of the beneficiaries of the trust. In his statutory notice of deficiency to the Curriers, the Commissioner determined that Catharine realized income from the trust in an amount greater than had been reported by them for the years 1946, 1947, and 1948, reflecting his disallowance of the depreciation deduction allocated to Catharine by the trust for these years. The Curriers filed their petition to this Court for a redetermination of the deficiencies. The Curriers are the same persons who brought a petition to the Tax Court for redetermination of an income tax deficiency for the taxable year 1941. The issue in that case was whether Catharine had a depreciable interest in the Blake Building in the year 1941. We held that she had. *Charles Bertram Currier*, 7 T.C. 980 (1946).

## OPINION

We must decide whether the petitioner, as a beneficiary of the testamentary trust established under her father's will, had in the years 1946, 1947, and 1948 such an interest in the Blake Building as to be entitled to deduct amounts on account of depreciation of that building.

The relevant provision, sec. 23, I.R.C. 1939, provides that:

In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

(1) DEPRECIATION.—A reasonable allowance for the exhaustion, wear and tear \* \* \*

    (1) of property used in the trade or business, or

    (2) of property held for the production of income. \* \* \*

Subsection (n) of section 23 of the Internal Revenue Code of 1939 provides that the basis for an allowance in respect to any property shall be determined in accordance with section 114 of the 1939 Code which provides that the basis of property for depreciation shall be the same as the adjusted cost basis provided in section 113(b) of the 1939 Code for the purpose of determining the gain upon the sale or other disposition of the property.

The allowance for depreciation is designed to permit the person who invests in a wasting asset a means of recouping, tax free, his investment in that property. To have the benefit of this deduction the taxpayer has the burden of proving that he has a depreciable interest in the property as to which he seeks a depreciation allowance. See *Barnes* v. *United States*, 222 F. Supp. 960 (D. Mass. 1963), affirmed sub nom. *Buzzell* v. *United States*, 326 F. 2d 825 (C.A. 1, 1964), and the cases cited therein.

Where the owner of real property enters into a long-term lease, under the terms of which the lessee is to construct at his own cost a building on the property, the lessee, not the lessor, is entitled to a deduction for the depreciation of the building. See *Reisinger* v. *Commissioner*, 144 F. 2d 475 (C.A. 2, 1944), affirming a Memorandum Opinion of this Court; *Friend* v. *Commissioner*, 119 F. 2d 969 (C.A. 7, 1941), affirming a Memorandum Opinion of this Court; *Commissioner* v. *Pearson*, 188 F. 2d 72 (C.A. 5, 1951), reversing and remanding on other grounds 13 T.C. 851; *First Nat. Bank of Kansas City* v. *Nee*, 190 F. 2d 61 (C.A. 8, 1951); *Goelet* v. *United States*, 266 F. 2d 881 (C.A. 2, 1959); *Schubert* v. *Commissioner*, 286 F. 2d 573 (C.A. 4, 1961), affirming 33 T.C. 1048.

The lessee, who is obligated to make improvements to the realty, is entitled to recover his capital outlay by deductions for depreciation. His right to the deductions is not altered by the fact that, under doctrines of local law, legal title to the improvements may reside in the lessor. In such situations it is the lessee, not the lessor, who suffers the economic loss as the property deteriorates, and who is entitled to the statutory allowance. *Helvering* v. *Lazarus & Co.*, 308 U.S. 252 (1939); *First Nat. Bank of Kansas City* v. *Nee*, supra. The party claiming depreciation must have some investment in the wasting asset. *Detroit Edison Co.* v. *Commissioner*, 319 U.S. 98 (1943).

The Commissioner takes the position in this case that the Blake Building represents the investment of the lessee with no cost to the lessor which would constitute a basis for the allowance of depreciation. The petitioner contends that in reality and for the purposes of Federal income tax consequences, it was the lessor, not the lessee, who invested in the Blake Building. He contends that this Court's disposition of *Charles Bertram Currier*, 7 T.C. 980 (1946), dealing with depreciation for 1941 on the same building as is here involved, is res judicata or acts as a collateral estoppel as to the Commissioner's assertion that it was the lessee who furnished the building. The *Currier* case is not res judicata as to this proceeding, which involves different tax years. *Commissioner* v. *Sunnen*, 333 U.S. 591 (1948). Further, that judgment would act as collateral estoppel only as to

those matters in this proceding which were *actually* presented and *determined* in the first suit. *Commissioner* v. *Sunnen, supra.* This Court decided *Currier* on the basis that where the executors included in Blake's estate the value of the building and paid Federal estate taxes thereon, the payment of such taxes represents the kind of investment in the building (reflected in the stepped-up basis of the building) upon which a deduction for depreciation is allowable.[1] This Court did not actually determine in *Currier* whether it was the lessee or the lessor who originally furnished the building. That determination was unnecessary because of our holding that the estate had acquired a depreciable interest in the building by virtue of its payment of estate taxes thereon. *Currier*, then, does not act as a collateral estoppel as to this question. Furthermore, as indicated in the footnote, the *Currier* case has been overruled. We find, as the Commissioner contends, that it was the lessee who furnished the Blake Building and who is entitled to take depreciation thereon, and not the lessor.

We find the Blakes did not invest their money in the Blake Building. They loaned their money to Carpenter and he invested it in the building. The petitioners strenuously maintain that it is a "complete surprise" to them that the Blakes were creditors of Carpenter. They argue that in reality the relationship was that between owners of business realty and their capable building manager. Carpenter had been manager of the old building and had suggested to the Blakes they should build a new, more modern building in the growing downtown area of Boston. He was to do most of the work if the Blakes would put up the money and he would continue to operate their building. Petitioners tell us Carpenter was a "poor orphan boy from New Hampshire" who had no money but whose shrewdness was recognized by Blake. They contend that Carpenter was not personally liable on the mortgage and in any event the Blakes always regarded the building itself as the only security they had for the money they had advanced for its construction. They point to the fact that legal title to the Blake Building was in Blake, and the fact that the building was financed by mortgages on the land and building which belonged to the Blakes, and that Carpenter did not sign any mortgage or promissory notes representing the financing. Petitioners conclude that it was Blake who would suffer the economic loss as the building depreciated.

We think that whatever were the extrinsic circumstances, the legal relationship between the Blakes and Carpenter was established by

---

[1] The allowance of depreciation deductions on this kind of "investment" has since been decided to have been in error; *Currier* has been expressly overruled. *Albert L. Rowan*, 22 T.C. 865, 874 (1954).

the terms of the original lease agreement and its subsequent modifications. Those instruments create the relation of creditor and debtor between the Blakes and Carpenter. Petitioners have shown nothing more than that the Blakes were poorly secured creditors of Carpenter. The equity in the building was Carpenter's and the economic loss due to depreciation would be suffered by Carpenter in the form of lost rental profits above the sums he undertook to pay the Blakes.

A lessor who advances sums to his lessee for the cost of a building to be erected by the lessee is not on that account entitled to a depreciation allowance. *Commissioner* v. *Revere Land Co.*, 169 F.2d 469 (C.A. 3, 1948). The mere inclusion of the building in Blake's estate and the payment of Federal estate taxes thereon does not create a depreciable interest in the building. *Albert L. Rowan*, 22 T.C. 865 (1954). Inasmuch as Blake had no property in the Blake Building upon which he could validly claim a depreciation allowance, his devisees, who made no investment of their own, have no right to take a depreciation allowance on that building. *Schubert* v. *Commissioner, supra.*

There is nothing in the present record which would cause us to question the statement made by the Court of Appeals at the conclusion of its opinion in *Buzzell* v. *United States, supra* at 827, with respect of the very building and the years involved herein, that:

As a creditor Blake and his successors were not the ones entitled to take depreciation. [The term "his successors" includes Catharine B. Currier, a petitioner herein.]

*Decision will be entered for the Commissioner.*