**M. DeMATTEO CONSTRUCTION CO.,**
**Plaintiff, Appellant,**

v.

**UNITED STATES of America,**
**Defendant, Appellee.**

**No. 7609.**

United States Court of Appeals,
First Circuit.

Nov. 6, 1970.

David F. Parish, Boston, Mass., with whom Herman Snyder and Snyder, Tep-

per & Berlin, Boston, Mass., were on brief, for appellant.

Richard Halberstein, Atty., Tax Div., Dept. of Justice, with whom Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Elmer J. Kelsey, Attys., Tax Division, Dept. of Justice, and Herbert F. Travers, Jr., U. S. Atty., were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

In 1926 the trustees under the will of one Eben Jordan, owning a parcel of land near Park Square, Boston, granted a ground lease on a net rental basis, the lease to expire, unless earlier for default or upon the payment of a substantial penalty by the lessee, 20 years after the death of certain lives in being, but in any event in 1990. The lessee thereafter erected a building known as the Motor Mart Garage. The taxpayer, M. DeMatteo Construction Co., purchased the property from the trustees in 1959. At this time the lease was in full force, and one of the named lives was still in being. The lease had, accordingly, not less than 20,[1] and not more than 31 years to run. In 1969, at the time of trial, the lease was still in effect, and the remaining named life still in being. Taxpayer's president, according to his testimony at the trial, initially allocated ten percent of its acquisition cost to the land, and ninety percent to the building. This latter percentage he intended to depreciate for tax purposes over the useful life of the building. To support the depreciation deduction taxpayer employed a qualified real estate expert, who advised it to apportion the cost at approximately two-thirds for the building and one-third for the land.

Taxpayer assumed a twenty-year life for the building from the date of purchase, and on this assumption took depreciation deductions on its income tax returns. Upon their disallowance taxpayer paid the additional tax and claimed refunds "for depreciation of the cost allocated to the building purchased by it or for amortization on [sic] the portion of its cost of the entire leasehold allocated to the building" for the years 1962–64. Thereafter, upon the Commissioner's presumed rejection of the claim by six months inaction, taxpayer sued in the district court for recovery of the payments.

The trial proceeded solely upon, and the evidence offered related solely to, taxpayer's first ground for relief, viz., its right to take depreciation in the building. In this court it seeks to argue, in addition, a premium lease amortization theory. We will not, however, consider this second alternative, which would require a different approach and different evidence.[2] This is an appeal asserting error at trial, not an opportunity to try some new theory.[3]

The district court dismissed the complaint on alternate grounds, that taxpayer had no cost basis in the building which would reach the end of its useful life prior to its reversion to taxpayer at the expected termination of the lease, and that the taxpayer had, in any case, failed to meet its burden of proving the fair and reasonable value of its interest in the building. D.Mass., 1970, 310 F. Supp. 1313.

The initial lessor was entitled to claim no depreciation with respect to the

---

1. No evidence was introduced as to the age or life expectancy of the named life in being.

2. Not the least of which would be the anticipated length of the lease. *See* n. 1, ante.

3. Although taxpayer points out that in the claims for refund, and in its complaint, it made reference to a premium lease amortization theory, it made no such claim at the trial. Three memoranda were filed in the trial court by the taxpayer. Only the second makes more than brief mention of lease amortization, and then solely for the purpose of deprecating it as a concept put forward by the government and rejected by the taxpayer.

building constructed by the lessee for the obvious reason that it had made no investment in the improvement and therefore had no cost basis in it. Buzzell v. United States, 1 Cir., 1964, 326 F.2d 825; Reisinger v. Commissioner of Internal Revenue, 2 Cir., 1944, 144 F.2d 475; Int.Rev.Code of 1954, §§ 167(g), 1011–1012; cf. Detroit Edison Co. v. Commissioner of Internal Revenue, 1943, 319 U.S. 98, 63 S.Ct. 902, 87 L.Ed. 1286; Treas.Reg. 1.167(a)-4 (1956). Taxpayer's assertion that the situation changed when it purchased the property, that because it acquired title to the building it obtained a cost basis in it, assumes the point in issue. It does not explain why the rationale underlying the denial of depreciation to the original lessor does not apply equally to the subsequent purchaser. It may be that taxpayer would present some sort of claim if, at the time of purchase, the anticipated life of the building had exceeded the term of the lease. Cf. Millinery Center Bldg. Corp. v. Commissioner of Internal Revenue, 1956, 350 U.S. 456, 76 S.Ct. 493, 100 L. Ed. 545. Where, however, as the trial court found to be the case here, the building's useful life will expire before the purchaser gains possession of it, and there is no indication the purchaser believes otherwise, the selling lessor has nothing to sell except the bare legal title, and the purchaser buys nothing more. We see no justification for allocating a portion of taxpayer's purchase price to, and thus establishing a cost basis in, the building when taxpayer purchased no interest of any substance in it.

Taxpayer places it reliance upon World Publishing Co. v. Commissioner of Internal Revenue, 8 Cir., 1962, 299 F.2d 614, which holds that depreciation is available because the purchasing lessor acquires the building as income producing property. That decision has received considerable criticism, and we decline to follow it.[4] It is the lease which produces the income, not a building which the lessee constructed and which is going to reach the end of its useful life before the taxpayer obtains possession. Taxpayer may have had a amortizable cost basis in the lease, but, as we have indicated, that question is not before us. Nor can we accept the distinction the Eighth Circuit draws in order to escape the force of the unanimous decisions reaching a contrary result where the lessor acquires the property by inheritance or devise. See the cases cited therein 299 F.2d at 618.[5]

Finally, taxpayer asserts that it had an interest in the building because the lessee, through default or otherwise, might prematurely terminate the lease before the expiration of the life of the building. The depreciable interest, if any, cf. Puerto Rico v. United States, 1 Cir., 1942, 132 F.2d 220, cert. denied 319 U.S. 752, 63 S.Ct. 1165, 87 L.Ed. 1706 is a highly speculative one, and the taxpayer had failed to prove its worth. It is obviously considerably less than the full value of the building. In this respect the Commissioner's finding of no depreciable interest must be presumed to be correct.

Affirmed.

4. See, e. g., 76 Harv.L.Rev. 1303 (1963); 23 Md.L.Rev. 353 (1963); 1963 Wis.L. Rev. 484.

5. As the opinion in *World Publishing* recognizes, the depreciation provisions of the revenue laws make no distinction between purchased property and property acquired by inheritance or devise. Int.Rev.Code of 1954, § 167. The provisions for determining basis, on the other hand, are different. Purchased property has a basis of cost, while property taken by inherit-

ance or devise has a basis of fair market value at the time of the transfer. Int. Rev.Code §§ 1012, 1014. However, an economically rational purchaser will pay the fair market value at the time of acquisition. If *World Publishing* is correct in distinguishing between persons acquiring by devise and by deed, both have acquired the same property, from the same type of predecessor, and have the same basis, but one can depreciate and the other cannot.