EXTRUSIONS DIVISION, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Extrusions Div. v. Commissioner
Docket No. 24655-93
United States Tax Court
T.C. Memo 1995-370; 1995 Tax Ct. Memo LEXIS 366; 70 T.C.M. (CCH) 314; August 7, 1995, Filed *366 Decision will be entered for respondent. Held: P may not deduct depreciation under sec. 168, I.R.C., on 11 antique automobiles because it failed to prove that it had made a capital investment in the automobiles. For petitioner: [1]Fred A. Foley. For respondent: James A. Mauro. LARO
LARO
MEMORANDUM FINDINGS OF FACT AND OPINION LARO, Judge: The parties submitted this case to the Court without trial. Rule 122(a). Extrusions Division, Inc., petitioned the Court to redetermine respondent's determination of Federal income tax deficiencies for its taxable years ended March 31, 1987 (1986 taxable year), and March 31, 1991 (1990 taxable year). Respondent determined deficiencies of $ 36,538 and $ 19,063 in petitioner's 1986 and 1990 taxable years, respectively. The deficiency for 1986 stems from respondent's determination that petitioner may not carry back to its 1986 taxable year, part of a net operating loss that arose in its taxable year ended March 31, 1990 (1989 taxable year). The Court must decide whether *367 petitioner may deduct depreciation in its 1989 and 1990 taxable years, on 11 antique automobiles (the subject automobiles). We hold it may not. Section references are to the Internal Revenue Code in effect for the years in issue. Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT [2]
Petitioner is a Michigan corporation that was formed in 1975. Petitioner's president and sole shareholder is, and has always been, James D. Azzar (James Azzar). Petitioner's principal office was in Grand Rapids, Michigan, when it petitioned the Court. During the taxable years in issue, petitioner's primary business activity was serving as a sales representative for Azzar Store Equipment Corp. (ASE), which is a corporation wholly owned by James Azzar's father, Sam Azzar. Approximately 95 percent of petitioner's sales (on behalf of ASE) were made to Steelcase, Inc., an international manufacturer of office furniture *368 headquartered in Grand Rapids, Michigan. ASE paid petitioner commissions on its sales of ASE's plastic parts. For its 1989 and 1990 taxable years, petitioner deducted depreciation of $ 93,446 and $ 56,068, respectively, on the subject automobiles. None of these automobiles were titled in petitioner's name. None of these automobiles generated any income during the taxable years in issue. Petitioner's only alleged rental income from the use of these automobiles was derived entirely from ASE and occurred in its taxable years ended March 31, 1988 (1987 taxable year), and March 31, 1989 (1988 taxable year). The subject automobiles, together with 69 other antique cars, were stored in a heated building owned by petitioner. The heated building was also used by ASE in its manufacturing business. The subject automobiles were driven on the highways in the State of Michigan using dealer license plates that the State issued to E.M.A. Corp. (EMA), for vehicles under EMA's control or possession. EMA is a family owned corporation; 40 percent of its stock is owned by James Azzar, 39 percent is owned by James Azzar's brother, and 21 percent is owned by Sam Azzar. Brief descriptions of the subject *369 automobiles are as follows: 1. 1931 Auburn -- James Azzar purchased this automobile at an auction on September 1, 1987, for $ 47,500. Its legal title is held by DMV Corp. (DMV). [3] The automobile's license plates were issued to DMV by the State of Minnesota under the designation "Classic Car". The "Classic Car" designation requires that the underlying vehicle be "owned and operated solely as a collector's item and not for general transportation purposes." 2. 1929 Auburn -- James Azzar purchased this automobile at an auction on September 1, 1987, for $ 50,500. Its legal title is held by DMV. The automobile's license plates were issued to DMV by the State of Minnesota under the designation "Classic Car". 3. 1926 Stutz -- An unidentified purchaser bought this automobile from Harrah's Club (Harrah's) at an auction on June 28, 1986, for $ 77,500. The automobile's legal title is held by Harrah's. 4. 1932 Packard -- James Azzar purchased this automobile at an auction *370 on August 30, 1986, for $ 31,000. Its legal title is held by James Azzar. 5. 1929 Packard -- EMA purchased this automobile at an auction on February 15, 1986, for $ 41,000. Its legal title is held by EMA. On January 17, 1994, EMA, through its secretary, James Azzar, executed an "Assignment" that set forth a transfer of this automobile to petitioner. 6. 1929 LaSalle -- EMA purchased this automobile at an auction on January 17, 1987, for $ 66,500. Its legal title is held by EMA. On January 17, 1994, EMA, through its secretary, James Azzar, executed an "Assignment" that set forth a transfer of this automobile to petitioner. 7. 1929 Rolls Royce -- An unidentified buyer bought this automobile on August 30, 1986. The automobile's legal title is held by DMV, and the automobile's license plates were issued to DMV by the State of Minnesota under the "Classic Car" designation. 8. 1928 Ford -- An unidentified purchaser acquired this automobile from Harrah's at an auction on June 27, 1986, for $ 17,500. The automobile's legal title is held by Harrah's. 9. 1912 Franklin -- An unidentified purchaser acquired this automobile from Harrah's at an auction on June 27, 1986, for $ 30,000. The *371 automobile's legal title is held by Harrah's. 10. 1906 Autocar -- An unidentified purchaser acquired this automobile from Harrah's at an auction on June 27, 1986, for $ 19,500. The automobile's legal title is held by Harrah's. 11. 1930 Buick -- EMA purchased this automobile at an auction on January 17, 1987, for $ 40,500. Its legal title is held by DMV, and the automobile's license plates were issued to DMV by the State of Minnesota under its "Collector Vehicle" and "Pioneer Vehicle" designations. The designation of "Pioneer Vehicle" requires that the vehicle be "manufactured prior to 1936" and "owned and operated solely as a collector's item and not for general transportation purposes." On January 17, 1994, EMA, through its secretary, James Azzar, executed an "Assignment" that set forth a transfer of this automobile to petitioner. OPINION Respondent determined, and reflected in her notice of deficiency, that petitioner could not deduct depreciation on any of the subject automobiles because petitioner had not established: (1) It had a capital interest in the subject automobiles; (2) the subject automobiles were used in a trade or business, or for the production of income; (3) *372 the value of the subject automobiles decreased from wear and tear and decay, obsolescence, technological improvements, economic changes, or the like; and (4) the subject automobiles had a determinable useful life. The burden is on petitioner to prove respondent's determinations incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The fact that the parties submitted this case to the Court fully stipulated does not change or otherwise lessen petitioner's burden. Rule 122(b); Kitch v. Commissioner, 104 T.C. 1, 8 (1995); Borchers v. Commissioner, 95 T.C. 82, 91 (1990), affd. on other issues 943 F.2d 22 (8th Cir. 1991); Service Bolt & Nut Co. Trust v. Commissioner, 78 T.C. 812, 819 (1982), affd. on other issues 724 F.2d 519 (6th Cir. 1983). A taxpayer whose investment in property is sufficient to give him or her a depreciable interest therein may deduct depreciation under section 168 if the property meets the four-prong test enunciated in Simon v. Commissioner, 103 T.C. 247, 259-260 (1994); *373 i.e., the property: (1) Is tangible personal property, (2) is placed in service after 1980, (3) is used in the taxpayer's trade or business, or held for the production of income, and (4) is of a character subject to the allowance for depreciation. Accordingly, petitioner may deduct depreciation on the subject automobiles if petitioner has a depreciable interest in the automobiles and the automobiles meet the four-prong Simon test. Simon v. Commissioner, supra at 253, 259-260; see also Helvering v. F. & R. Lazarus & Co., 308 U.S. 252, 254 (1939); Mayerson v. Commissioner, 47 T.C. 340, 350 (1966); Gladding Dry Goods Co. v. Commissioner, 2 B.T.A. 336, 338 (1925). Although a taxpayer usually must have ownership of depreciable property in order to deduct depreciation thereon, a lack of ownership is not determinative. Depreciation may generally be deducted to the extent that the taxpayer proves that he or she actually expended capital in the acquisition or improvement of the property. Helvering v. F. & R. Lazarus & Co., supra at 254; *374 Currier v. Commissioner, 51 T.C. 488, 492 (1968); Hunter v. Commissioner, 46 T.C. 477, 490 (1966); Blake v. Commissioner, 20 T.C. 721, 732 (1953). Petitioner is no stranger to this Court with respect to the depreciation issue at hand, or with respect to its (petitioner's) burden of proof on this issue. In Extrusions Div., Inc. v. Commissioner, T.C. Memo. 1994-610 (Extrusions I), this Court addressed the same depreciation issue with respect to petitioner's 1987 and 1988 taxable years. In Extrusions I, the Court held that petitioner could not deduct depreciation on the subject automobiles for its 1987 and 1988 taxable years because petitioner failed to prove that it had a capital interest in the automobiles. In the instant case, petitioner attempts to overcome its inadequate showing in Extrusions I by resubmitting a significant portion of the earlier case's record and supplementing the resubmission with: (1) Certain documents that were not admitted by the Court in the earlier case; these documents were given to respondent untimely; (2) miscellaneous documents *375 related to the purchase of the subject automobiles; (3) an advertisement in the December 30, 1987, Wall Street Journal to "RENT A PIECE OF AUTOMOTIVE HISTORY"; (4) an agreement (dated November 22, 1985) between petitioner and a bank, under which petitioner guaranteed a $ 2.1 million line of credit given to James Azzar, personally, and agreed to pledge unidentified stock to secure the guarantee; (5) miscellaneous bank records; (6) two letters to Kruse Auctioneers of Auburn, Indiana, from an officer of a bank in Grand Rapids, Michigan, praising the financial condition of James Azzar, personally; and (7) the affidavits of James Azzar, his accountant, and an antique car collector. Petitioner relies mainly in this case on: (1) A transcript of some of James Azzar's testimony in Extrusions I, and (2) an affidavit of James Azzar. The statements in the affidavit would have been James Azzar's testimony in the instant case, had he been called at trial. Based on our review of the instant record, we are not convinced that we should decide this case differently than the Court did in Extrusions I. [4] *377 We are not persuaded by James Azzar's testimony in Extrusions I or his affidavit.[5] As the Court *376 stated, with respect to James Azzar's testimony in Extrusions I: Much of his [James Azzar's] testimony is uncorroborated and served the interests of his wholly owned corporation, petitioner herein. We found much of James Azzar's testimony to be questionable. Under the circumstances, we are not required to, and we do not, rely on that testimony to support petitioner's positions in this case. See Estate of DeNiro v. Commissioner, 746 F.2d 327, 330-331 (6th Cir. 1984), affg. in part and remanding in part T.C. Memo. 1982-497; Lovell & Hart, Inc. v. Commissioner, 456 F.2d 145, 148 (6th Cir. 1972), affg. per curiam T.C. Memo. 1970-335; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Hradesky v. Commissioner, 65 T.C. 87, 90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). [Extrusions Div., Inc. v. Commissioner, supra.]
We are not persuaded that James Azzar's testimony from Extrusions I is entitled to any more weight than the Court gave it in that case. We also do not rely on James Azzar's affidavit for the same reasons as mentioned above in the excerpt from Extrusions I. We hold that petitioner is not entitled to deduct depreciation on the subject automobiles. As was true in Extrusions I, the instant record does not persuade us that petitioner supplied the funds for the purchase of the subject automobiles. To the contrary, the record indicates that all of the subject automobiles were bought and paid for by either: (1) James Azzar and corporations, other than petitioner, in which he holds an interest, or (2) unidentified buyers. Furthermore, to reiterate the *378 Court's statement in Extrusions I: Even assuming arguendo that petitioner did supply the funds to James Azzar and to EMA in order to enable them to purchase certain of the automobiles at issue, that fact, standing alone, would not prove that petitioner made a capital investment in those automobiles, especially where, as here, none of those automobiles was titled in petitioner's name, and there is no other reliable evidence in the record of petitioner's ownership of or other capital investment in them. James Azzar is petitioner's sole shareholder and president. He also is the largest stockholder of EMA, and the balance of the EMA stock is owned by members of his family. Transactions involving a corporation and its (1) sole shareholder or (2) any other related person such as EMA must be closely scrutinized in order to determine their true substance. See Berthold v. Commissioner, 404 F.2d 119, 121-122 (6th Cir. 1968), affg. T.C. Memo. 1967-102; Professional Servs. v. Commissioner, 79 T.C. 888, 925 (1982); Electric & Neon, Inc. v. Commissioner, 56 T.C. 1324, 1339 (1971), *379 affg. without published opinion 496 F.2d 876 (5th Cir. 1974). If petitioner had supplied the money to or on behalf of James Azzar so as to enable him to purchase certain of the automobiles in question, such funds could have been characterized as a dividend, compensation, or a loan to him. If petitioner had supplied the money to or on behalf of EMA so as to enable it to purchase certain of the automobiles in question, such funds could have been characterized as a dividend, compensation, or a loan from petitioner to James Azzar followed by a contribution of those funds by him to EMA's capital. Alternatively, such funds could simply have been a loan from petitioner to EMA. In any of those events, James Azzar or EMA, as the case may be, and not petitioner, would have been the owner of, and the person with a capital investment in, those automobiles even assuming arguendo that the funds to purchase them had been supplied by petitioner. [Extrusions Div., Inc. v. Commissioner, T.C. Memo. 1994-10.]
In sum, we sustain respondent's determination that petitioner did not have a depreciable interest in the subject automobiles, for basically *380 the same reasons as stated in Extrusions I. In so doing, we have considered all arguments made by petitioner and, to the extent not discussed above, have found them to be without merit. Based on our holding, we need not, and do not, decide the correctness of the remainder of respondent's determinations with respect to this case. To reflect the foregoing, Decision will be entered for respondent. Footnotes
1. On Mar. 7, 1995, the Court allowed Douglas J. Van Der Aa to withdraw as petitioner's counsel of record. Fred A. Foley entered his appearance in this case on Mar. 15, 1995.↩
2. The stipulations and accompanying exhibits are incorporated herein by this reference.↩
3. DMV is a wholly owned subsidiary of petitioner.↩
4. Indeed, we believe that petitioner may have been collaterally estopped from litigating the subject issue had respondent raised this defense. Lea, Inc. v. Commissioner, 69 T.C. 762, 769-770 (1978); see also Rule 39 (collateral estoppel is an affirmative defense that must be raised in party's pleadings). It appears that the controlling facts of the subject issue remain unchanged from the date of our decision in Extrusions Div., Inc. v. Commissioner, T.C. Memo. 1994-610↩.
5. We are also not persuaded by the affidavits of either the antique car collector or the accountant. The parties stipulated that the statements in the affidavits would have been the affiants' testimony, had they been called at trial. This "testimony", however, is mainly general and conclusory, and does not directly relate to the specifics of this case.↩