**M. DeMATTEO CONSTRUCTION CO.,
Plaintiff,**

**v.**

**UNITED STATES of America,
Defendant.**

**Civ. A. No. 68-761-C.**

United States District Court,
D. Massachusetts.

March 23, 1970.

Herman Snyder, Jack Green, Snyder, Tepper, Berlin & Katz, Boston, Mass., for plaintiff.

Herbert F. Travers, Jr., U. S. Atty., Joseph A. Lena, Asst. U. S. Atty., Thomas Wechter, Dept. of Justice, Tax Division, Washington, D. C., for defendant.

## OPINION

CAFFREY, District Judge.

This is a civil action in which plaintiff, a corporation organized under the laws of the Commonwealth of Massachusetts, seeks to recover the sum of $57,009.21, consisting of a deficiency of $20,747.85 assessed for the calendar year 1962, a deficiency of $19,191.77 assessed for the calendar year 1963, and a deficiency of $17,069.59 assessed for the calendar year 1964, by the Commissioner of Internal

Revenue. These sums were paid by the plaintiff, and thereafter claims for refund were duly and timely filed with the Commissioner. After six months of inaction by the Commissioner the instant case was filed, within the applicable statute of limitations. Jurisdiction of this court is invoked under 28 U.S.C.A. sec. 1346(a) (1).

The case was tried to the court and has been extensively briefed by the parties. After trial I find and rule as follows:

On November 10, 1959, plaintiff, M. DeMatteo Construction Co., purchased the property located at 5-29 Broadway (Park Square), Boston, Massachuetts, for $925,000. The real estate at this location consists of 52,416 square feet of land on which is located a building operated and commonly known as the Motor Mart Garage. On November 10, 1959, during each of the three taxable years involved herein, and at the present time, the property in question was subject to a ground rental lease executed in 1926 between the then owners of the fee, the trustees under the will of Eben D. Jordan, as lessors, and one Samuel Lebowich as lessee. In 1926, Lebowich and others made a declaration of trust captioned "The Motor Mart Trust," in which they named themselves as trustees and described the corpus of the trust as consisting of the lease on the property. The trustees of the Motor Mart Trust then constructed an eight-story garage building which was completed shortly prior to January 21, 1927. Plaintiff's expert said that its reproduction cost is $2,700,-000.

The life of this lease was not described as a term for a fixed number of years, but as a term which was to last for twenty years after the demise of the survivor of six named individuals, but in no case was the lease to extend beyond May 31, 1990. One of the six individuals named in the lease was alive on November 10, 1959, and was still alive on the date of the trial, September 30, 1969. Thus, the lease will last at least until September 30, 1989. The trustees of the

Motor Mart Trust conveyed their interest in the Motor Mart Garage building to a corporation called Motor Mart Garage Company. The capital stock of the Motor Mart Garage Company was sold for $750,000 in April 1969, to an undisclosed principal, whose agent was Ryan, Elliot & Co., Inc., a real estate firm.

After acquiring its interest in the property, plaintiff retained the chief executive officer of a Boston real estate firm to make an appraisal of the property. He made his appraisal and also made an allocation of $300,000 as fairly representing the then value of the land and $625,000 as representing the then valuation of the building. In reliance on this appraisal and allocation, plaintiff entered the building on its corporate books at a value of $625,000 and undertook to depreciate this sum over a twenty-year period on a double declining balance method. An audit of plaintiff's corporate tax returns for the years 1962, 1963 and 1964 disallowed depreciation taken by plaintiff for the three years in question in the sums, respectively, of $39,899.71, $36,907.23 and $34,139.19. On the basis of the ruling of the District Director disallowing the depreciation of the building in the three sums mentioned for the three years, deficiencies were assessed with respect to the years 1962, 1963 and 1964, which assessments were paid in full in the fall of 1967. Claims for refund for the three years, in the amount of $57,009.21, were filed with the Internal Revenue Service on November 7, 1967. The claims for refund were never rejected by certified mail, and on August 19, 1968, more than six months after the filing of the claims for refund, the instant action was commenced in this court.

Plaintiff's chief contention in this litigation is that in consideration of the $925,000 it paid to the trustees under the will of Eben D. Jordan, it acquired an interest in the property of such a nature as to give it a right to depreciate that portion of the purchase price which it allocated to the cost of the building on its corporate books, i. e., $625,000. The Gov-

ernment's position is that plaintiff obtained no depreciable interest whatever in the building because, by reason of the provisions in the terms of the lease described above, neither the taxpayer nor its grantor had any present interest in the building capable of being depreciated by either of them, under the provisions of 26 U.S.C.A. § 167.

See, also, Regulation 118, Sec. 39.23 (1)-1, Rev.Rul. 55–59, which provides in part:

"In the case of a lessor of property on which a building has been erected by the lessee, without cost to such lessor, under a long-term lease which extends beyond the useful life of the building, there is no basis for the allowance of depreciation to the lessor since the lessor has no investment or cost therein which is subject to exhaustion."

In taking this position, the Government relies on the provision in the lease under which neither taxpayer nor its grantor had a *right* to acquire any interest in the building until after the expiration of twenty years from the death of the survivor of the six named individuals, or, alternatively, until May 31, 1990, at which time the building will no longer have an economically useful life.

In resolving these issues, I rule that the taxpayer acquired, in consideration of its payment of $925,000, the fee simple to the land on which the building in question is located, a right to a reversion at least by May 31, 1990, and a bare possibility of a reverter in the case of two specified contingencies, neither of which has occurred as of the time of the filing of this opinion, (1) the death prior to May 31, 1970 of the survivor of the six individuals referred to above, or (2) a default by the lessee of such a serious nature as to give the lessor a right to terminate the lease. Taxpayer also acquired, for its payment of $925,000, the right to receive approximately $2,711,000 in ground rentals over the period of time running up to May 31, 1990, which right was somewhat conservatively [1] characterized by Martin DeMatteo, President of plaintiff, in his testimony, "I felt that at the time, that the return on the total investment, the land and building, was a fair one."

The Government's primary reliance herein is on the decision of the Court of Appeals for the Eighth Circuit in the case of First Nat. Bank of Kansas City v. Nee, 190 F.2d 61 (1951), and the decision of the Court of Appeals for the Second Circuit in Goelet v. United States, 266 F.2d 881 (1959). Plaintiff's primary reliance is on a decision of the Court of Appeals for the Eighth Circuit in World Publishing Co. v. Commissioner of Internal Revenue, 299 F.2d 614 (1962). The decision of the instant controversy resolves itself down to a decision whether the ruling and reasoning of the *Nee* and *Goelet* cases or the ruling and reasoning of the *World Publishing* case should be held controlling herein.

In *Nee*, and again in *Goelet*, it was held that a person who takes the interest of the testator, who was a fee-owner of a piece of property subject to a ground rent lease, gets from the testator no depreciable interest in a building erected by the lessee during the lifetime of the lease. Reduced to its simplest terms, the ruling of both these cases is an application of the philosophic maxim, "nemo dat quod non habet," i. e., the court in both cases ruled that because the testator had no depreciable interest in a building subject to a long term lease until after the termination of the lease, his devisees could not, by reason of his death, acquire something that he himself never had in his lifetime, namely, a depreciable interest in the building subject to the lease

In *World Publishing*, the court made a distinction between the purchaser of a fee subject to the terms of a ground rent lease and persons who took by devise, as did the taxpayers in *Nee* and *Goelet*. This court is unable to perceive how a person who has no depreciable interest in a building subject to a ground rent lease, and who consequently has been

1. A 6% return on $925,000 for twenty years would be $1,110,000.

held in all the decided cases as having no depreciable interest in the building capable of being transferred to his heirs or devisees, can rationally be thought to have any depreciable interest in the building subject to a long term lease which he can effectively transfer to a grantor if he elects to sell his interest in the premises. As a matter of analysis, it would appear that the original owner either has or has not a depreciable interest in the premises. If he has not, for purposes of taking any depreciation while he is alive, the courts have uniformly concluded that he likewise has not, for purposes of transferring the depreciable interest to his heirs or devisees. Consequently, it would appear that proper analysis of this question would not only indicate, but dictate, that a similar ruling be made in the case of a person who has no depreciable interest in the building during his lifetime who elects to sell the building prior to his demise, rather than to continue to hold that interest until it is passed on to his heirs or devisees.

Even if under the appropriately applicable law it should be ruled that plaintiff has a depreciable interest in the building built on this land by the lessees, and even if it should be ruled that there is legal validity to plaintiff's alternate theory of a right to recovery herein, namely, that as claimed in Schedule A to Exhibits A, B, and C, appended to the complaint, it "is entitled to claim an amortization deduction on the Motor Mart Garage property in the taxable years * * * 1962, 1963, 1964," it still may not recover herein because of a second difficulty which confronts plaintiff in this case, namely, that at the trial it was adduced that plaintiff's expert was not aware, at the time he made his appraisal of the premises and his allocation of the purchase price as between land and building, that the building was subject to the long term ground rent lease. On the basis of this failure of plaintiff's expert to acquire the information as to the lease, I reject his opinion as not worthy of this court's belief, and

I specifically reject his statement that the existence of the lease was not a material factor in this controversy.

Consequently, I find that plaintiff has failed to sustain its burden of proof that at the time it set up the $625,-000 allocation for the building on its books, $625,000 or any other proved figure was a fair and reasonable valuation of its interest in the building, which valuation it seeks herein to depreciate or amortize over a period of years.

Complaint dismissed.